Robin K. Perkins, SBN: 131252
Natalia D. Asbill, SBN: 281860
PERKINS & ASSOCIATES
300 Capitol Mall, Suite 1800
Sacramento, CA 95814
Telephone:     916.446.2000
Facsimile:      916.447.6400
rperkins@perkins-lawoffice.com
nasbill@perkins-lawoffice.com

Attorneys for Plaintiff
BRIANNA FIZULIC

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIANNA FIZULIC,<br><br>          Plaintiff,<br><br>     v.<br><br>CELLCO PARTNERSHIP, a Delaware Partnership doing business in the State of California as VERIZON WIRELESS;<br><br>          Defendant. | Case No.<br><br>**PLAINTIFF'S COMPLAINT FOR RETALIATION IN VIOLATION OF CALIFORNIA GOVERNMENT CODE SECTION 12940**<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff BRIANNA FIZULIC (hereinafter "Ms. Fizulic" or "Plaintiff") alleges against CELLCO PARTNERSHIP, a Delaware Partnership doing business in the State of California as VERIZON WIRELESS (hereinafter "Verizon" or "Defendant") as follows:

**GENERAL ALLEGATIONS**

1.     This Court has jurisdiction over this lawsuit pursuant to the provisions of 28 U.S.C. §§1331, 1332.  The amount in controversy exceeds $75,000.

2.     Venue is proper in the United States District Court, Eastern District, because all of the events or omissions giving rise to these claims occurred in this District.

3.     Plaintiff is, and at all times mentioned herein in this Complaint was, a resident of Sacramento County, California.

4.     Plaintiff is informed, believes and thereon alleges Defendant Cellco Partnership, is a Delaware Partnership, doing business in the State of California as Verizon Wireless and conducts

1  business throughout the state, including the County of Sacramento, and is subject to suit under
2  Government Code sections 12940, *et seq.*

3      5.       Plaintiff is informed, believes and thereon alleges Verizon is responsible and liable
4  for the occurrences alleged herein, and Plaintiff's injuries, as alleged, were proximately caused by
5  Verizon.

6                                    **FACTUAL BACKGROUND**

7      6.       Ms. Fizulic was an employee of Verizon handling Personal Sales for approximately
8  nine months until an opportunity arose for her to work in Business Sales. As part of orientation
9  process into the Business Sales department, Ms. Fizulic received training administered by
10  supervisor, Mr. Michael Alston. Within one (1) weeks' time, Mr. Alston began to engage in highly
11  inappropriate and questionable behavior with a focus directed at one particular trainee, Ms. Fizulic.
12  Ms. Fizulic is informed, believes and thereon alleges that at all times herein mentions, Mr. Alston
13  was acting within the course and scope of his employment with Verizon and was Ms. Fizulic's
14  supervisor responsible for her training.

15      7.       Mr. Alston's behavior and sexually harassing conduct quickly escalated to
16  unacceptable and objectionable levels when Mr. Alston repeatedly solicited Ms. Fizulic for drinks to
17  which she declined each and every time.  Mr. Alston used his position of authority to obtain Ms.
18  Fizulic's phone number. Ms. Fizulic repeatedly denied Mr. Alston's continued propositions.  Mr.
19  Alston sent a number of text messages indicating that he could not stop thinking about Ms. Fizulic.
20  The working relationship was made all the more challenging and strained when Ms. Fizulic learned
21  that Mr. Alston had communicated his strong feelings for Ms. Fizulic to a co-worker and stated that
22  he was madly in love with Ms. Fizulic.  At all times during Mr. Alston's inappropriate exchanges,
23  Ms. Fizulic repeatedly told him that she was not interested and asked him to stop his unwelcome
24  advances.  At one point, Mr. Alston confronted Ms. Fizulic at her car and inquired, "Why are you
25  showing mixed emotions towards me?"

26      8.       Once Mr. Alston realized that his infatuation was not mutually received, his actions
27  toward Ms. Fizulic became hostile at best and terrorizing at worst and retaliatory.  Mr. Alston clearly
28  took Ms. Filzulic's unwillingness to engage in a relationship as a personal embarrassment and began

COMPLAINT FOR DAMAGES                        1.

1    creating an extremely hostile working atmosphere for her.  Mr. Alston would not only refer to Ms.

2    Fizulic as "stupid" and snap his fingers at her but also threatened her when she forgot part of a

3    project, but also referred to her as a dumb girl.

4            9.      As Mr. Alston's behavior became more volatile, Ms. Fizulic contacted Ms. Piper

5    Dunn at Verizon's Human Resources Department and communicated what was happening during the

6    training and complained with regard to Mr. Alston's sexually harassing behavior.  One such email

7    communication occurred in the midst of a training session to which Mr. Alston promptly toward Ms.

8    Fizulic to "get the fuck off your computer" in front of the whole class.

9            10.     Due to sexually harassing behavior and the hostility of her working environment, Ms.

10   Fizulic, reached out to her District Manager, Ms. Taisha Watkins, and engaged in protected activity,

11   again, by complaining about Mr. Alston's deplorable conduct, including his sexual harassment and

12   retaliation.  Upon hearing about Mr. Alston, Ms. Watkins appeared surprised. With the sudden

13   change in Mr. Alston's attitude toward her, Ms. Fizulic had become fearful for her safety as Mr.

14   Alston had not only talked about his guns and interest in hunting with her but also demonstrated

15   reprehensible behavior during his training classes where he 1) characterized women as "whores" and

16   "cheaters," 2) insinuated that a Hispanic employee's brother was outside washing windows, and 3)

17   showed a racist NRA video suggesting African Americans should not own guns.

18           11.     Based upon the conduct of Mr. Alston and the lack of response from Human

19   Resources and the District Manager, and in fear for her own safety, Ms. Fizulic left work on July 23,

20   2014. Ms. Fizulic specifically asked whether or not Mr. Alston knew where she lived, to which Ms.

21   Watkins responded, "No."  Yet, after complaining about Mr. Alston's sexual harassment, someone

22   came to Ms. Fizulic's home, through her private gate, and left two dozen roses on her front porch.

23   In addition, less than three (3) days later on Saturday, July 26, 2014, Ms. Fizulic saw Ms. Alston

24   drive by her personal residence.

25           12.     During this time, Ms. Fizulic also learned from a co-worker, who had personally

26   witnessed the sexually harassing behavior by Mr. Alston, that both Ms. Fizulic and her co-worker

27   were being demoted back to their old position.  They were each told that they were to tell everyone

28   that both she and Ms. Fizulic had failed the training.

13.     As a result of continued panic attacks, Ms. Fizulic went to her doctors.  She also contacted Verizon and was told that Ms. Dunn was on vacation and that the person taking her spot was too high up for Ms. Fizulic to speak to.  When Ms. Dunn at Verizon finally called, she was very rude to Ms. Fizulic and indicated that she did not understand why she had not returned to work.

14.     Unable to continue to work, Ms. Fizulic applied for workers compensation benefits and disability.  On or about September 19, 2014, Ms. Fizulic was notified by Verizon that it had not approved the claim of Ms. Fizulic for workers compensation benefits or short term disability as a result of the actions of Mr. Alston.  Verizon also indicated that Ms. Fizulic's claim for FMLA had been denied.  Verizon specifically indicated that her continued absence from work was considered "unexcused" and that her continued unauthorized absence could result in "termination of employment for job abandonment."

15.     In 2015, and as a result of her continued inability to return to work, Verizon sent Ms. Fizulic for a Qualified Medical Examination. In approximately May 2015, the doctor that performed the Qualified Medical Examination indicated that Ms. Fizulic should not return to work for Verizon.

16.     On June 1, 2015, Verizon was specifically provided a doctor's note indicating that Ms. Fizulic was continuing to suffer from extreme anxiety, panic attacks and not sleeping and that she was unable to work.  Verizon was notified that it was uncertain at that time as to whether Ms. Fizulic would be able to return to Verizon and if so, what accommodations, if any, she would need. On June 25, 2015,

17.     On or about June 25, 2015, Ms. Fizulic provided Verizon a doctor's note indicating that she would not be able to return to work until at least September 1, 2015.  Notwithstanding this doctor's note, on or about August 5, 2015, Verizon terminated Ms. Fizulic from her employment. Then on August 11, 2015, Verizon sent correspondence to Ms. Fizulic notifying her that she had been terminated effective August 11, 2015.

18.     On September 14, 2015, Verizon provided notice to Ms. Fizulic indicating that it was reinstating her employment and that she was to return to work on October 15, 2015.

19.     On October 19, 2015, although Verizon was specifically aware of Ms. Fizulic's medical condition, Verizon claimed that Ms. Fizulic failed to provide documentation to support her

1   medical condition and sent correspondence to Ms. Fizulic claiming that indicating that Verizon had

2   concluded that Ms. Fizulic abandoned her position.

3        20.    On June 29, 2016, Ms. Fizulic filed a claim with the Department of Fair Employment

4   and Housing for Retaliation against Verizon and received a Notice of Case Closure.

**FIRST CAUSE OF ACTION**

*(Retaliation In Violation of California Government Code section 12940(h) Against Defendant*

*Verizon)*

8        21.    Ms. Fizulic hereby re-alleges and incorporates by reference all previous allegations as

9   though fully set forth herein.

10       22.    Ms. Fizulic engaged in protected activity, by, among other things rejecting Mr.

11  Alton's sexual advances and sexually harassing behavior and by reporting what she reasonably

12  believed was unlawful sexual harassment to her supervisors and to the Human Resources

13  Department at Verizon.

14       23.    Ms. Fizulic is informed, believes, and thereon alleges that Verizon retaliated against

15  Ms. Fizulic for engaging in protected activity by among other things, materially altering Ms.

16  Fizulic's working conditions when (1) within days of rejecting Mr. Alston advances when Mr.

17  Alston's referred to Ms. Fizulic as "stupid" and as a "dumb girl"; (2) by threatening Ms. Fizulic and

18  telling Ms. Fizulic to "get the fuck off your computer" in front of her training class; (3) by Mr.

19  Alton's referring to women as "whores" and "cheaters," (4) by Mr. Alston driving by Ms. Fizulic's

20  personal residence which threatened and intimidated her; (5) by requiring Ms. Fizulic and her co-

21  worker to return to her old position and to tell everyone that that they had failed the training; (6)

22  requiring Ms. Fizulic to return to work on August 4, 2014, even though she made it clear that she did

23  not feel safe; (7) denying Ms. Fizulic's claim for disability benefits and workers compensation

24  benefits; (8) wrongfully terminating Ms. Fizulic's employment on August 5, 2015 while Verizon

25  was aware that Ms. Fizulic was on disability leave due to the sexually harassing conduct of Mr.

26  Alston; (9) wrongfully terminating Ms. Fizulic's employment again on August 11, 2015 while

27  Verizon was aware that Ms. Fizulic was on disability leave due to the sexually harassing conduct of

28  Mr. Alston; and, (10) after reinstating Ms. Fizulic's employment on September 14, 2015, on October

19, 2015, Verizon falsely claimed that Ms. Fizulic failed to provide documentation to support her medical condition and claiming that Ms. Fizulic abandoned her position.

24.     Ms. Fizulic is informed, believes, and thereon alleges the retaliatory conduct alleged above violates Government Code section 12940, subdivision (h).

25.     Ms. Fizulic is informed, believes, and thereon alleges that her rejection of Mr. Alton's sexual advances and sexually harassing conduct, and Ms. Fizulic's complaints, involvement and participation in the investigation relating to allegations of sexual harassment and retaliation against Mr. Alton, were substantial motivating factors in the retaliatory conduct by Verizon.

26.     Ms. Fizulic is informed, believes, and thereon alleges, as a proximate and legal result of Verizon's conduct, Ms. Fizulic has suffered, among other things, the loss of wages, salary, lost future earnings, intangible benefits, loss of promotional opportunities, loss of reputation, and additional amounts of money she would have received had she not been subjected to such retaliation, in an amount according to proof and in excess of the jurisdictional minimum of this Court and, on information and belief, will continue to do so in the future.

27.     Ms. Fizulic is informed, believes, and thereon alleges, as a further proximate and legal result of the above-referenced actions by Verizon, Ms. Fizulic has suffered humiliation, embarrassment, anxiety, mortification, mental anguish and emotional distress. Ms. Fizulic is further informed, believes, and thereon alleges, as a further proximate and legal result of the retaliation and consequent harm, Ms. Fizulic has suffered damages and attorneys' fees, in an amount according to proof and in excess of the jurisdictional minimum of this Court and, on information and belief, will continue to do so in the future.

28.     Ms. Fizulic is informed, believes, and thereon alleges that the aforementioned conduct by the Defendant Verizon was willful, oppressive, fraudulent and malicious and therefore Ms. Fizulic is entitled to punitive damages

WHEREFORE, Plaintiff prays for judgment against Verizon as hereinafter set forth:

## **PRAYER**

WHEREFORE, Plaintiff prays for judgment against Verizon, as hereinafter set forth:

1.     For past and future economic loss;

PERKINS & ASSOCIATES
300 Capitol Mall, Suite 1800
Sacramento, CA  95814
916.446.2000

COMPLAINT FOR DAMAGES

5.

2.     For past and future non-economic loss, including damages for emotional distress, humiliation, embarrassment, anxiety, mortification, and mental anguish;

3.     For punitive damages, where applicable

4.     For attorneys' fees, where applicable;

5.     For prejudgment interest, where applicable;

6.     For costs of suit herein incurred;

For such other and further relief as the Court may deem proper.


Dated: August 11, 2016                    PERKINS & ASSOCIATES



                                          By: /s/ Robin K. Perkins_____
                                          Robin K. Perkins
                                          Attorneys for Plaintiff
                                          BRIANNA FIZULIC